United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSEPH ALEJANDRO ORTEGA,

    Plaintiff,

    vs.

KURT RODENSPIEL *et al.*,

    Defendants.

Case No.: **10-CV-3239-YGR**

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT:  GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Plaintiff Joseph Alejandro Ortega ("Plaintiff" or "Ortega") brings this civil rights action against Defendants Officer Kurt Rodenspiel ("Officer Rodenspiel"), the San Mateo Police Department ("SMPD"), and the City of San Mateo ("City") (collectively, "Defendants") under 42 U.S.C. §§ 1983[1] and 1985, the United States and California Constitutions, and California state law for injuries suffered when Officer Rodenspiel shot Plaintiff in the back.  (Dkt. No. 1 ("Complaint").) Plaintiff alleges six causes of action: (1) Unconstitutional Use of Excessive Force, Deprivation of Due Process of Law, and Interference with his Zone of Privacy pursuant to Section 1983 against all Defendants; (2) General Negligence against all Defendants; (3) Negligent Training and Supervision against SMPD and the City; (4) Assault and Battery against all Defendants; (5) Negligent Infliction of Emotional Distress against all Defendants; and (6) Interference with Civil and Constitutional Rights in violation of California Civil Code § 52.1 against all Defendants.

---

[1] Section 1983 provides that:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

The parties have filed cross-motions for summary judgment.  Defendants move for summary judgment on the grounds that Officer Rodenspiel is entitled to qualified immunity because he was justified in using lethal force.  Plaintiff moves for partial summary judgment on the basis that the City ratified Officer Rodenspiel's use of excessive force in shooting Plaintiff and is therefore liable for his conduct under Section 1983.  The Court held a hearing on the cross-motions on July 10, 2012.  On August 3, 2012, the Court issued an Order staying the action pending resolution of Plaintiff's appeal of his criminal conviction.  (Dkt. No. 103.)

Having carefully considered the papers submitted, the pleadings in this action, and the oral argument of counsel, for the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motion.

I.     **BACKGROUND**

A.     **UNDISPUTED FACTS**

On August 13, 2009,[2] Officer Rodenspiel, an eleven-year veteran of the SMPD[3] shot Plaintiff in the back while Plaintiff was seated in the driver's seat of his automobile.  (Complaint ¶ 9; Response to Defendants' Statement of Undisputed Facts ("Pl's Resp. Statement"), Dkt. No. 86, at No. 9; Defendants Responsive Statement to Plaintiff's Separate Statement of Material Facts ("Defs' Resp. Statement"), Dkt. No. 88, at No. 1.)  At the time of the incident, Officer Rodenspiel was a member of the Special Weapons and Tactics ("SWAT") Team and working in the Special Investigations Bureau of the SMPD.  (Pl's Resp. Statement at Nos. 9-10.)

The incident occurred while SMPD officer's carried out a valid, "high risk" search warrant for a drug raid.  (*Id.* at No. 11.)  Due to information that Hector Ramirez, the individual named on the warrant, was dangerous–Ramirez was a known gang member who was on parole for assault with a deadly weapon–and might be armed with a gun, the search warrant was considered "high risk." (*Id.* at Nos. 12, 14.)  The police had information indicating that a drug transaction would occur when

---

[2] Plaintiff alleges that the incident occurred on August 13, 2009, however Plaintiff's Separate Statements mistakenly indicates that the incident occurred on August 9, 2009.  (Complaint ¶ 9; Defs' Resp. Statement at No. 1.)

[3] SMPD is an agency within Defendant, City.  (Defs' Resp. Statement at No. 6.)

a buyer pulled up to Ramirez's home where he would then bring the drugs out to the buyer's car to complete the sale.  (*Id.* at No. 13.)

On the morning of the incident, the officers set up surveillance on Ramirez's home.  (*Id.* at No. 15.)  Plaintiff pulled up to the residence in a Mitsubishi Eclipse, parallel parking at the curb next to Ramirez's home.  (*Id.*)  Plaintiff then got out of the car and approached the residence; a few minutes later Plaintiff and sat down in the driver's seat.  (*Id.*)  Shortly thereafter, Ramirez came out of the residence and sat in the passenger seat of the Eclipse.  (*Id.*)

### 1.   The Arrest.

Sergeant Anthony Sanchez made the decision to detain Plaintiff and Ramirez while they were seated in Plaintiff's Mitsubishi Eclipse and then execute the search warrant on Ramirez's home.  (*Id.* at No. 16.)  A minivan with four officers, including Officer Rodenspiel, drove up from behind Plaintiff's car to block an escape from behind.  (*Id.*)  The officers, including Rodenspiel, quickly exited the minivan.  (*Id.* at No. 17.)  Officers Todd Mefford and Mikhail Venikov arrived in a Ford Explorer and blocked Plaintiff's car from the front.  (*Id.* at No. 16.)  The officers were clearly identified by their clothing and yelled commands to the occupants of the vehicle:  "Police!" and "Search Warrant!"  (*Id.* at No. 18.)

### 2.   The Collision.

When the officers' Ford Explorer was five to six feet from Plaintiff's Mitsubishi Eclipse, Plaintiff accelerated his vehicle and collided with the Ford Explorer.  (*Id.* at No. 20.)  The Mitsubishi Eclipse operated by Plaintiff was a hatchback; the Officers were in an SUV.  At the time of the collision, Officers Mefford and Venikov were inside of the Explorer but the doors to the vehicle may have been open.  (*Id.*)

### 3.   The Shooting.

Officer Rodenspiel, who was at the rear of the Mitsubishi Eclipse, moved to his right and began to bring his MP5 rifle from a low ready position up to his shoulder.  (*Id.* at Nos. 24, 25.)  At the same time, he moved his finger from the indexed position to the trigger.  (*Id.* at No. 25.)  Officer Rodenspiel then tripped on the curb and his weapon discharged firing one round, which entered through the trunk of Plaintiff's car and struck Plaintiff.  (*Id.* at Nos. 28-29.)  Plaintiff and

Ramirez were taken into custody, and Plaintiff was taken to the hospital for his injuries. (*Id.* at No. 34.) After the incident, the San Mateo County District Attorney charged and prosecuted Plaintiff for assault on a peace officer with a deadly weapon (a vehicle) or by means of force likely to produce great bodily injury (Count 1); and assault with a deadly weapon (Count 2), both in violation of California Penal Code § 245. (*Id.* at No. 35.)

**4.** ***Plaintiff Convicted for Felony Assault With a Deadly Weapon for Using his Car in a Manner Likely to Cause Death or Great Bodily Injury.***

On December 16, 2010, Plaintiff was convicted for felony assault with a deadly weapon. The jury found Ortega guilty "of willfully and unlawfully committing an assault with a deadly weapon, to wit: a car, in violation of Penal Code Section 245(a)(1)." (*Id.* at No. 37; Declaration of Patrick R. Co ("Co Dec."), Ex. 6, "Verdict Form," Dkt. No. 62-6.) By definition, the jury found that Plaintiff willfully used his car in such a way that it was capable and likely to cause death or great bodily injury when he drove his vehicle in the direction of the Ford Explorer that Officers Mefford and Venikov were driving. (Co Dec., Ex. 4, Dkt. No. 62-4, at 616:7-10.) The judgment was affirmed on appeal and the California Supreme Court denied Plaintiff's petition for review. *See People v. Ortega*, A131244, 2012 WL 1621564 (Cal. Ct. App. May 9, 2012), *unpublished* (May 9, 2012), *as modified on denial of reh'g* (June 5, 2012), *rev. denied* (Aug. 15, 2012).

**5.** ***Administrative Review.***

After the incident, Captain Raffaeli of the SMPD conducted an administrative disciplinary review of Officer Rodenspiel's conduct during the incident and issued a report titled Inter-Office Communication regarding the *Administrative Review: Firearms Discharge and Use of Force–1448 Newbridge Avenue, San Mateo*, dated September 28, 2009 ("Report"). (Defs' Resp. Statement at Nos. 2 & 3.) The Report found that Officer Rodenspiel did not violate any laws, regulations, rules, or procedures in operating his MP5 weapon, and as a result no disciplinary action was imposed against Officer Rodenspiel. (*Id.*)

4

**B.    DISPUTED FACTS**

The parties dispute whether: (1) the shooting of Plaintiff was intentional or accidental; (2) the shooting occurred simultaneous with or after the vehicles collided; (3) the position of the other officers posed a hazard; and (4) Officer Rodenspiel placed his finger on the trigger prematurely in violation of SMPD policy.  Plaintiff points to evidence that at the time Officer Rodenspiel's weapon discharged, Officer Rodenspiel was evaluating the situation and *prepared* to use lethal force but did not *intend* to use lethal force.  (Pl's Reply 7.)  Plaintiff points to evidence that Officer Rodenspiel fired his weapon *after* the collision occurred and after the Mitsubishi Eclipse had stopped moving. (*Id.* at 6-7.)  Plaintiff contends that the positioning of the vehicles and officers during the shooting created crossfire and backdrop hazards, which placed Officer Rodenspiel in a position whereby intentionally shooting at Plaintiff would have placed Officer Mefford in danger.  (Defs' Resp. Statement at No. 1; Pl's Reply 7.)  Plaintiff also contends that Officer Rodenspiel placed his finger on the trigger of the weapon prematurely, while in the low-ready, waist height position, and prior to shouldering or aiming the weapon, in violation of SMPD policy.

## II.    DISCUSSION

Plaintiff moves for partial summary judgment on the issue of whether the Defendants ratified Officer Rodenspiel's conduct of allegedly using excessive force in shooting Plaintiff and are thereby liable under *Monell*.  Defendant moves for summary judgment on the issue of qualified immunity– whether an objectively reasonable officer in Officer Rodenspiel's situation would have been justified in using lethal force.

**A.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the

1    light most favorable to the non-moving party and give that party the benefit of all reasonable

2    inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

3    *Corp.,* 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.  However, "at this stage of litigation,

4    the judge does not weigh conflicting evidence with respect to a disputed material fact" nor make

5    "credibility determinations with respect to statements made in affidavits, answers to interrogatories,

6    admissions, or depositions."  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

7    626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 253).

8         **B.    PLAINTIFF'S SECTION 1983 *MONELL* CLAIM**

9         A municipality may be liable under Section 1983 when the enforcement of a municipal policy

10   or custom was the moving force behind the violation of a constitutionally protected right.  *Monell v.*

11   *Dep't of Social Servs.,* 436 U.S. 658, 663-64 (1978).  An authorized policymaker's ratification of a

12   subordinate's decision can also form the basis of *Monell* liability.  *City of St. Louis v. Praprotnik,* 485

13   U.S. 112, 127 (1988).  Failure to investigate or mere acquiescence in a single instance of alleged

14   unconstitutional conduct is not sufficient to demonstrate ratification.  *Id.* at 113, 130; *Gillette v.*

15   *Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992).

16        Plaintiff argues that there are no genuine issues of material fact that the City ratified Officer

17   Rodenspiel's conduct and therefore, the City is subject to *Monell* liability for Officer Rodenspiel's

18   actions if a jury finds Officer Rodenspiel liable for use of excessive force.  (Plaintiff's Mot. 2-3.)

19   While it is for the Court to identify those officials with policymaking authority,[4] Plaintiff does not

20   provide any evidence (or legal authority) that shows anyone with policymaking authority ratified

21   Officer Rodenspiel's conduct.[5]  As such, Plaintiff has failed to carry his burden to show the absence

22   of a genuine issue of material fact for trial.  Accordingly, summary judgment in favor of Plaintiff on

23   the issue of ratification is not appropriate.

24   _____

[4] "[T]he identification of those officials whose decisions represent the official policy of the local governmental
25   unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v.*
*Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original).  To identify officials with
26   final policy-making authority, the court should look to state law.  *Praprotnik, supra*, 485 U.S. at 124
("identification of policymaking officials is not a question of federal law, and it is not a question of fact in the
27   usual sense").  Authority to make municipal policy may be granted directly by the legislature or delegated by
an official with policymaking authority.  *Id.*
28   [5] At oral argument, counsel for Plaintiff conceded that Plaintiff failed to meet his burden.

1    Based on the foregoing analysis, the Court **DENIES** Plaintiff's Motion for Partial Summary

2 Judgment.

3        **C.**    **QUALIFIED IMMUNITY**

4        The doctrine of qualified immunity protects government officials "from liability for civil

5 damages insofar as their conduct does not violate clearly established statutory or constitutional rights

6 of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

7 Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v.*

8 *Forsyth*, 472 U.S. 511, 526 (1985).  Qualified immunity may operate "to protect officers from the

9 sometimes 'hazy border between excessive and acceptable force.'" *Saucier v. Katz*, 533 U.S. 194,

10 201, 206 (2001), *abrogated in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009).

11 A public official's shield of qualified immunity is lost only if a plaintiff can establish both that (1)

12 the officer's conduct violated a constitutional right, and (2) the right was "clearly established" at the

13 time of the defendant's alleged misconduct.[6] *Id.* at 201.  "The relevant dispositive inquiry in

14 determining whether a right is clearly established is whether it would be clear to a reasonable officer

15 that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 534 U.S. 194,

16 199 (2004) (internal citations omitted).   Defendants seek summary judgment on the basis that an

17 objective reasonable officer under Officer Rodenspiel's circumstances would be justified in using

18 lethal force.  Defs' Mot. at 5-9.  As set forth below, Plaintiff cannot establish a constitutional

19 violation.  Therefore, Officer Rodenspiel is entitled to qualified immunity.

20        **D.**    **FOURTH AMENDMENT CLAIM**

21            *1.    Framework.*

22            Plaintiff's first cause of action is brought under 42 U.S.C. § 1983 for excessive use of

23 force.  Excessive force claims are analyzed under the Fourth Amendment "reasonableness" standard.

24 *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Deciding whether an officer's use of force was

25 reasonable requires the Court to balance "the nature and quality of the intrusion on the individual's

26 Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal

27

28 [6] The Court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be
addressed first in light of the circumstances in the particular case at hand." *Pearson, supra*, 555 U.S. at 236.

United States District Court
Northern District of California

quotation marks omitted). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom … judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (internal citations omitted).

The inquiry is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Arpin v. Santa Clara Valley Trans. Agcy.*, 261 F.3d 912, (9th Cir. 2003) (quoting *Graham*, *supra*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, *supra*, 490 U.S. at 396-97. Accordingly, there is not "a magical on/off switch that triggers rigid preconditions" for the use of deadly force. *Scott v. Harris*, 550 U.S. 372, 382 (2007).

Deadly force is justified when necessary to prevent serious physical harm to police officers or others. *Garner*, *supra*, 471 U.S. at 11 (officer may reasonably use deadly force where he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officers or to others"); *Scott v. Harris*, 550 U.S. 372, 382 (2007) (same); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 528 (Cal. Ct. App. 2009) (police officer's use of deadly force is reasonable if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others). The jury found that Plaintiff willfully used his car "in such a way that it [wa]s capable of causing and likely to cause death or great bodily injury" when he drove his vehicle in the direction of the Ford Explorer that Officers Mefford and Venikov were driving.

      2.    *The Doctrine of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).*

The doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes a Section 1983 claim based on actions which would "render a conviction or sentence invalid" where that conviction has not been reversed, expunged, or called into question by issuance of a writ of habeas corpus. 512 U.S. at 487. "*Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithhart v. Towers*, 79 F.3d 951, 952 (9th Cir. 1996). "Consequently, the relevant question is whether success in a subsequent 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence …." *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2011) (quoting *Heck*, *supra*, 512 U.S. at 487).[7]

The jury found Ortega guilty "of willfully and unlawfully committing an assault with a deadly weapon, to wit: a car, in violation of Penal Code Section 245(a)(1)." (Co. Dec., Ex. 6, "Verdict Form.")

The jury was instructed that to convict Ortega for felony assault with a deadly weapon under California Penal Code § 245(a), the State needed to prove the following beyond a reasonable doubt:

(1) "Mr. Ortega did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person";

(2) "Mr. Ortega did that act willfully";

(3) "When Mr. Ortega acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone"; and

(4) "When Mr. Ortega acted, he had the present ability to apply force with a deadly weapon."[8]

(Co Dec., Ex. 4, Dkt. No. 62-4, at 615:5-13.)

---

[7] "The instructions given on the charge that Morales assaulted a peace officer with a deadly weapon required that to convict Morales, the jury had to find that she acted willfully against a police officer who was 'lawfully performing his duties as a peace officer,' and that the officer was not 'using unreasonable or excessive force in his or her duties.' Accordingly, the jury's conviction of Morales rejected any contention that Deputy Winter used excessive force, and thus any recovery by the plaintiffs in this civil action would be contrary to the jury's determination." *Beets*, *supra*, 669 F.3d at 1045.

[8] The jury acquitted Ortega of Count 1, assault on a peace officer, which would have required proof beyond a reasonable doubt of two additional elements: (5) when Mr. Ortega acted, the persons assaulted were lawfully performing their duties as peace officers; and (6) when Mr. Ortega acted, he knew or should have known that the persons assaulted were peace officers who were performing their duties.

9

1    Additionally, the jury was instructed that:  "A deadly weapon is any object, instrument, or

2    weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of

3    causing and likely to cause death or great bodily injury."  (*Id.* at 616:7-10.)  This instruction set forth

4    two separate ways in which a weapon may be considered deadly.  The first is where an object,

5    instrument, or weapon is inherently deadly or dangerous; the second is where an object, instrument,

6    or weapon is used in such a way that it is capable of causing *and* likely to cause death or great bodily

7    injury.  Here, the undisputed facts demonstrate that the offense for which Ortega was convicted was

8    the second way; Ortega used an object or instrument in such a way that it was capable of causing and

9    likely to cause death or great bodily injury.  Specifically, "[t]he jury found that Plaintiff willfully

10   used his car in such a way that was capable and likely to cause death or great bodily injury" when he

11   drove his vehicle in the direction of the Ford Explorer that Officers Mefford and Venikov were

12   driving.

13   Thus, Ortega's conviction rested upon the jury's determination that Ortega drove his

14   Mitsubishi Eclipse into the Ford Explorer that Officers Mefford and Venikov were driving "in such

15   a way that it [wa]s … likely to cause death or great bodily injury" to Officers Mefford and Venikov.

16   Under *Heck*, to the extent that this action seeks to negate that element of the crime for which

17   Plaintiff has been convicted, it is barred absent proof that his conviction has been invalidated.

18   Therefore, the Court must accept the jury's determination that Ortega acted such that he was

19   "likely to cause death or great bodily injury."

20         *3.     Imminent Danger.*

21             *a)      Undisputed facts.*

22   Plaintiff disputes whether the situation was one of imminent danger that

23   justified the use of lethal force.  According to Plaintiff, a reasonable police officer would not have

24   perceived the situation as requiring the use of deadly force.  In his opposition, Plaintiff proffers facts

25   that are not material, are not supported by the record, or both.  *See Hernandez v. Spacelabs Med.,*

26   *Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (non-moving party "must produce evidence in response ….

27   [H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported

28   conjecture or conclusory statements").  First, Plaintiff argues that the driver of the Mitsubishi Eclipse

was unknown.  (Pl's Opp'n 12.)  This fact not material, as the driver, Plaintiff, "willfully used his car in such a way that was capable and likely to cause death or great bodily injury" to Officers Mefford and Venikov.  Second, Plaintiff argues that his Mitsubishi Eclipse was moving forward and not endangering the officers behind it, including Rodenspiel.  This fact is not material to whether the Mitsubishi Eclipse was "likely to cause death or great bodily injury" to the police officers in front of the car, namely, Officers Mefford and Venikov, and therefore, created a situation of imminent danger to officers on the scene.  Third, Plaintiff argues that he was not disobeying police commands, not attempting to evade arrest or escape and could not escape because his car was blocked by a Ford Explorer in front and a minivan from behind.  Whether Plaintiff was resisting or evading arrest is not material to whether Plaintiff used his vehicle "in such a way that was capable and likely to cause death or great bodily injury" to Officers Mefford and Venikov.  Fourth, Plaintiff contends that there was no indication that weapons were in the Eclipse or on the driver or Ramirez.  This fact is irrelevant as the undisputed evidence shows the police were executing a "high risk" search warrant and had reason to believe that Ramirez would be armed.  Fifth, Plaintiff argues that property damage was the worst that would happen from a low speed collision between his Mitsubishi Eclipse and a much larger Ford Explorer.  While possible, the Court cannot analyze the issue from a place of 20/20 hindsight.  Moreover, this assertion is contrary to the jury's determination that "Plaintiff willfully used his car in such a way that was capable and likely to cause death or great bodily injury" to Officers Mefford and Venikov and the fact that Officer Mefford sustained physical injuries as a result of the crash.

> b)    *Facts offered to create a triable issue.*

> > i.    Whether other officers were in the line of fire?

Plaintiff's expert opines that, at the time that Officer Rodenspiel's weapon discharged, Officer Mefford was in the line of fire such that Officer Rodenspiel should not have fired his weapon because it would have endangered Officer Mefford.  Defendants argue that the expert's analysis ignores that at the time of the shooting Ortega posed an immediate threat to the safety of the other officers.  Plaintiff fails to explain how a potential breach of the standard of care owed to another police officer creates a triable issue of fact regarding whether Officer Rodenspiel

violated Plaintiff's constitutional rights.  *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").

        ii.      Whether there was a time gap between the collision and shooting?

       Plaintiff argues that there is a factual dispute, which precludes summary judgment, regarding whether there was a time gap between the collision and when Officer Rodenspiel moved his finger to the trigger.  Had a sufficient amount of time passed after the vehicles collided and the situation calmed down, then there may be an issue of fact as to whether the use of deadly force was still justified.  Here, the undisputed facts show that it was a tense, uncertain, rapidly evolving situation.  (Pl's Resp. Statement at No. 18.)  Plaintiff has not pointed to any evidence to support his assertion that there is an issue of fact for a jury to decide whether, after the collision, a sufficient amount of time had passed for a reasonable officer on the scene to reassess the situation and determine if the use of lethal force still was justified.  Accordingly, Plaintiff has not carried his burden to show that there is a material issue of fact for trial concerning the timing of the collision and the shot.

        iii.      Whether Rodenspiel intended to shoot Plaintiff?

       The parties dispute whether Officer Rodenspiel intended to shoot Plaintiff.  To the extent that Officer Rodenspiel intended to shoot Plaintiff, the above analysis demonstrates that the level of force used was objectively reasonable under the totality of the circumstances.  However, irrespective of Officer Rodenspiel's intent, his actions were objectively reasonable in light of facts and circumstances.

       Plaintiff argues that the underlying issue of whether the shot was an accidental discharge caused by Officer Rodenspiel's moving his finger from index to trigger prematurely and under unsafe circumstances precludes qualified immunity.  If a reasonable officer on the scene was constitutionally authorized to fire a gun, an act that cannot be completed without first placing a finger on the trigger,[9] then it follows that the act of placing a finger on the trigger also was

---

[9] No party argues that a weapon malfunction caused Officer Rodenspiel's MP5 to discharge or that Officer Rodenspiel placed his finger on the trigger by accident.

United States District Court
Northern District of California

1   constitutionally authorized.  In other words, if it was reasonable for Officer Rodenspiel to discharge

2   his MP5 intentionally, an act that could not be performed without first placing a finger on the

3   trigger, it follows then that it was reasonable for Officer Rodenspiel to place his finger on the trigger

4   before discharging the weapon.  Thus whether the discharge was accidental or intentional is not

5   material to the determination of whether Officer Rodenspiel should be entitled to qualified

6   immunity.

7          Although reasonableness is oftentimes a fact specific inquiry for the jury, a defendant can

8   prevail on summary judgment if the court "concludes, after resolving all factual disputes in favor of

9   the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."

10   *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  Considering that a jury already determined that

11   Plaintiff used his vehicle "in such a way that was capable and likely to cause death or great bodily

12   injury" to Officers Mefford and Venikov—circumstances where the use of deadly force would be

13   objectively reasonable—no disputed material issues of facts preclude summary judgment on the issue

14   of qualified immunity.

15          E.     EFFECT OF QUALIFIED IMMUNITY RULING ON PLAINTIFF'S CLAIMS

16                 1.     *Plaintiff's Other Constitutional Claims in the First Cause of Action.*

17          Plaintiff's First Cause of Action also alleges deprivation of Due Process and

18   interference with the Zone of Privacy.  (Complaint ¶ 17.)  Defendants argue correctly that they are

19   entitled to summary judgment on these alleged constitutional violations because claims that a law

20   enforcement officer used excessive force in the course of an arrest or other "seizure" are judged

21   under the Fourth Amendment reasonableness standard.  *Graham*, *supra*, 490 U.S. 395.  Plaintiff does

22   not argue to the contrary, which the Court takes to mean that Plaintiff has abandoned these claims.

23          Therefore, the Court GRANTS Defendants' Motion for Summary Judgment on the issue of

24   qualified immunity as to the First Cause of Action.

25                 2.     *Second Cause of Action:  General Negligence.*[10]

26          To prevail on his negligence claim, Plaintiff must prove that Officer Rodenspiel acted

27   _____

28   [10] Plaintiff alleges that Officer Rodenspiel had a duty to avoid causing unnecessary physical harm and distress
to Plaintiff while carrying out his law enforcement activities.  (Complaint ¶ 20.)

13

unreasonably and this proximately caused Plaintiff's injury.  *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (Cal. 1996) (in California, the elements for negligence are:  (a) a legal duty to use due care; (b) breach; and (c) resulting injury).  Where, as here, a "federal court factually finds that the police officer['s] conduct was objectively reasonable and grants summary judgment, that decision bars a state negligence action premised upon violation of the same primary right." *Sanders v. City of Fresno*, 551 F. Supp.2d 1149, 1181 (E.D. Cal. 2008) (citing *City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1084 (Cal. Ct. App. 2003)).

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Second Cause of Action for "General Negligence."

> *3.      Third Cause of Action:  Negligent Training and Supervision.*

An element of Plaintiff's claim for negligent training and supervision is that Plaintiff's constitutional injury would have been avoided had SMPD and/or the City of San Mateo properly trained Officer Rodenspiel.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). Because there is no violation of Plaintiff's constitutional rights, there is no basis for finding that Officer Rodenspiel was inadequately trained.  *See Saman v. Robbins*, 173 F.3d 1150, 1157 (9th Cir. 1999) ("By finding that officers did not use excessive force against [plaintiffs], the question whether the City had a policy authorizing or condoning the use of excessive force is moot because the plaintiffs suffered no constitutional deprivations.").

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Third Cause of Action for "Negligent Training and Supervision."

> *4.      Fourth Cause of Action:  Assault and Battery.*

Plaintiff's assault and battery claim is dependent upon proof that Defendants applied an unreasonable amount of force.  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (Cal. Ct. App. 1998); Cal. Jury Instr.-Civ. 7.54 ("A peace officer who uses unreasonable or excessive force in making an arrest or detention commits a battery upon the person being arrested or detained as to the excessive force").  Since Officer Rodenspiel's actions cannot be viewed as unreasonable under the circumstances, Plaintiff's state law claim for assault and battery fails as well.  *See Samon*, *supra*, 173 F.3d at 1157 n. 6 (Fourth Amendment standard of reasonableness also applies under California law).

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Fourth Cause of Action for "Assault and Battery."

> 5. *Fifth Cause of Action:  Negligent Infliction of Emotional Distress.*

California courts do not view negligent infliction of emotional distress as an independent tort, but rather, the courts view it as a species of negligence to which the traditional negligence elements apply.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984, 863 P.2d 795, 807 (Cal. 1993) (the tort is negligence, of which a duty to the plaintiff is an essential element); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1073 (Cal. 1992).  Thus, for the same reasons that Plaintiff cannot recover on his claim for general negligence, his claim for negligent infliction of emotional distress also fails.

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Fifth Cause of Action for "Negligent Infliction of Emotional Distress."

> 6. *Sixth Cause of Action:  California Civil Code § 52.1.*

The Bane Civil Rights Act, Cal. Civ. Code § 52.1, permits an individual to sue for damages where his or her constitutional rights are violated.  *See City of Simi Valley*, *supra*, 111 Cal. App. 4th at 1085.  Because there is no violation of Plaintiff's constitutional rights, there is no conduct upon which to base a claim for liability under Section 52.1 of the California Civil Code.

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Sixth Cause of Action for "Violation of California Civil Code Section 52.1."

## III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**.

The Court will enter judgment by separate Order.

This Order terminates Dkt. Nos. 48 & 52.

**IT IS SO ORDERED.**

Dated:  October 4, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

15